You are proceeding. Thank you. Good morning, Your Honors. I have been here once before on this same case. I'm sorry. Your name and who you represent. Certainly. Theodore Parker of law firm Parker Nelson Air and I represent the appellants in this matter, Richardson Construction Company and Hartford Insurance, Inc. I began, I wanted to begin by recalling this Court's attention to the last time we were here and we were only here on the issue of jurisdiction. It was right after the Ayala case was reversed and the Court remanded this case back to the District Court for a trial. Previously when I was here, the Court granted our motion for summary judgment on the lack of pendant party jurisdiction the day before trial. And the reason I bring this up because I recall quite clearly Judge Kaczynski saying that as soon as the sexual, I'm sorry, the sexy federal issues were resolved, the Court seemed to lose interest and dispose of this case on summary judgment. And this, based on that argument, I just remember that conversation very well in the statements by Judge Kaczynski because on the morning of trial, the Judge decided to dispose of this case again on summary judgment after all of it. You had nothing to do with that and Judge Block, I had nothing to do with that. But it brought that to memory as soon as he granted that motion when the jury's waiting, we're waiting to pick a jury on the first day of trial. And I also bring that up because jurisdiction, I believe, and we, of course, went into this in our opening brief and our reply brief. Jurisdiction, I believe, is still very relevant in terms of the questions presented by this appeal. The, and in preparing for this and realizing that the Cement v. Franz Scone case, which is the Eastern District of New York 1999 case, very similar to the facts here in that a bond company was attempting to avoid liability for the trust fund benefits based on lack of notice. I don't think that was my case, though, was it? I don't believe it was your case. But I brought that here because I believe it has quite a bit to do with jurisdiction, of course, and then my latter arguments dealing with notice requirements under Nevada Statute 339, which is the Little Miller Act, in comparison to the federal Big Miller Act. Okay. Could, given the time allowed, would you be sure you spent time on notice? Because that's the one area I really have some trouble with. Certainly. Certainly. The, in terms of notice, I'll jump right to that because that's very it's been decided by the Reagan case in our favor. Pursuant to Nevada Statute 339.035, notice is required by a party not having a direct contractual relationship with the general contractor. Okay. Now, the trust fund doesn't have any direct relationship with either the sub or with Richardson, correct? It had a, it does not have a direct relationship with the surety for Richardson. It did with the subcontractor peripherally because it was, of course, it was to be paid the fringe benefits. The So your argument is that they have, that the trustee of the fund, the fund has a, fits within the literal language of the statute? I, no, I believe it's excluded by the literal language of the statute because the statute says if you have a direct relationship With the subcontractor? With, again, I'm not representing the subcontractor. I know. I'm trying to understand Richardson's point. You're saying that they have no direct relationship with the general contractor. Or the surety. Or the surety. So they don't come out, they don't come out from under the notice requirement statute that way. Exactly. But they, do they have, my question is, do they have a direct contractual relationship with the subcontractor, which imposes the requirement of giving notice? Does the trust, do the trustees have a direct contractual relationship with the subcontractor? Your Honor, I believe that the, they have a relationship, a direct relationship with the subcontractor because the agreement signed with the subcontractor required the subcontractor to do certain things towards payment of the fringe benefits. And it also allowed the trust fund to be able to inspect books, for example, to perform audits, to inspect projects. So they did have a relationship. But it still does not allow them to get beyond the requirements of the 30-day notice, first providing services or materials, and then the 90-day requirement after the last day of providing materials or service or labor. And so it does not, they do not, they cannot escape the notice requirements in the 339035 simply by having a, some type of relationship with a subcontractor because the 339 says to make a proper bond claim against the general contractor and the bond presented secure by the general contractor, you have to provide those notices because you did not have a direct relationship with the general. And as a result, the general would never be aware of your existence without those notice requirements being fulfilled. So you're interpreting the words direct contractual relationship under the statutory scheme to basically place the trustees in the shoes of the employees of the subcontractor. Exactly. Or a material supplier of a subcontractor. Or a material supplier. That's exactly right. And that's what Reagan says. Reagan is squarely on point in that regard. And it says, a general contractor or surety would have no knowledge of the trust funds or a material supplier or a labor supplier that was not in direct contractual relationship with the general or the surety unless the notice requirements are fulfilled. Reagan is completely on point. So that's why we believe that to be the case in terms of notice. My, in terms of jurisdiction, this is where I started and I'm going to try to move pretty  I'd like to reserve two minutes for rebuttal. The, in terms of jurisdiction, and I brought this up because in the concrete cement versus Franz Kohn case, Eastern District of Nevada, New York, 1999, the court held that where there were no remaining Federal issues, that jurisdiction would not lie for purely State law claims. Now, in that case, what they discovered was that the default had not been granted yet against the ERISA claim in terms of the subcontractor. But it indicates, the court indicates, that had that been done, there would be no jurisdiction, Federal jurisdiction for these purely State claims. Keeping in mind the surety has filed claims against Richardson and Hartford based on NRS 339035 and NRS 608150. And there's been no decisions in Nevada, in Nevada Supreme, in Nevada Supreme Court holding that a bond company is responsible for a surety, I'm sorry, for a trust fund's benefits without notice under 339. And then a general contractor is not responsible for a trust fund's benefits beyond the fringe benefits. Did we resolve this question the last time around? Didn't we say that the district court retains some of the metal jurisdiction? And that's fine, Your Honor. And I started there because if the court is not inclined to hear any jurisdictional arguments, I will move forward. As inclined as we might be, it's law of the case and law of the circuit. It's not a published opinion, it's a, I think it was a published opinion. Yeah. That's fine, Your Honor. And so no bond rights, if you think that the earlier panel was wrong. We can move on back to Oberlin, right? Very good, Your Honor. Under NRS 608150, as stated before, there are no Nevada Supreme Court cases holding a general contractor or a surety for anything beyond the labor or the material indebtedness. That's the definition under 608150. The labor debt is the bond company that provides for the payment of liquidated damages and attorney's fees. I'm just not clear about that. It does not. In fact, that's a very good question, Judge Block. The cases that were cited by the Respondents in this case are two, they're two district court, Federal district court cases and one State lower case. The Tover case is a 1957 case that deals with a surety agreeing to pay, but the amount was stipulated to. There was no question before the Supreme Court as to whether or not it was awardable or compensable against the surety of the general contractor. It was stipulated. You say that basically attorney's fees and or liquidated damages has to have either contractual basis to it, underpinning to it, or statutory underpinning. And under Nevada law, there is nothing in Nevada law that educates us about what  Nothing at all. In fact, in Nevada, as the American rule, I believe, the attorney's fees are only awardable under statute, under contract, or under an offer of judgment. The only time the trust funds have ever been able to get attorney's fees is when it's been stipulated to or when they receive less than $20,000 under the statute. In Nevada, if you get an award below $20,000, you have a you can be awarded So you think this would require us to interpret Nevada law? I think exactly it would require you to interpret Nevada law. And perhaps it's just something that should be certified to Nevada Supreme Court. Because there's been not one case other than those stipulated to by the underlying subcontractor and general contractor where attorney's fees, liquidated damages have been awarded to If the CBA did provide for that, you would not be making this argument. That's right. And, Your Honor, if I could have one more minute, because it's something I want to touch on that I think is very important. The only case where the two Nevada cases, the Summit case and the RICO case, that I believe are improperly relied upon by the Respondents, in that case, both general contractors had actually entered into labor agreements. That's what happened in the RICO case, and that's what happened in Summit. They both entered into a labor agreement where they were contractually related to or had a contract with the trust fund. And in those cases, the federal district court awarded attorney's fees and liquidated damages. But in this case, Richardson paid all of the wages, not once because he paid the subcontractor, not twice because he paid the Nevada State Labor Commissioner, but he's being asked to pay for it a third time. And he's being asked to pay for attorney's fees and penalties and liquidated damages, and he's done nothing wrong. Why would a penalty be appropriate against a non-offending general contractor who had no contractual relationship, who's paid not only once, not a third time? That law presupposes that the general is going to supervise the payment behavior of the sub. And that's fine. That's what the notice is all about. And that's fine. The Nevada Labor Commission does not require payment of attorney's fees, does not require the payment of liquidated damages. And he's paid that amount. They came in with an amount, and he's paid it. Why would the statute give a preference to a union over the Nevada Labor Commission? Why would it give a preference to the union over a non-union company? There is no preference. The only way you can harmonize all of the cases is where there's a contract, then the trust fund would have a valid argument. But where there is no contract requiring a general contractor to do that, because there is no relationship here between the trust funds in Richardson or the trust funds, there is no right to award liquidated damages, penalties, or attorney's fees. I appreciate your comments. Thank you very much. Good morning. Adam Siegel on behalf of the Laborers Joint Trust Funds. Where do you point to liability for attorney's fees or liquidated damages? Is it contractually based or is it statutorily based? Both. Explain that to me. The trust agreements that govern the trust funds require payment of attorney's fees, liquidated damages, interest, and ERISA has the mirror requirement, and Desert Valley, the delinquent union subcontractor, is unquestionably responsible for all those fees. The question really, the crux is how do we graph that onto the liability of Richardson as general contractor, Hartford as surety? And the reason is the definition for what is owed under a Miller Act claim or what is owed under Nevada's general contractor liability statute is something called indebtedness for labor, and labor has been defined in every case that's dealt with at Nevada Supreme Court, District of Nevada, U.S. Supreme Court as including part and parcel all amounts due under the labor agreement and ERISA. So you're referring to Carter basically as the Supreme Court case that reaches into trust fund relationships, so to speak, and holds the bonding company responsible in that situation, which was a case involving the contractor. But if you look at Carter, which is premised upon the fact that the trustees stand in the same shoes as the employees for liability purposes on the bond, how can you then say that the notice provision should not, you know, equitably and fairly also attach? Well, the way that the Carter court finds standing is no longer applicable post-ERISA when under ERISA the trust funds have a right in their own name to collect those amounts. As pointed out by the Mountbatten case, Southern District of New York cited in the briefs, the Miller Act does cover some entities that have no contracts with the general or the subs, and as it happens that the case law finding that tends to be involving ERISA trust funds. Implicit in every Miller Act claim in which an ERISA trust fund has been allowed to recover is that a claimant who has no contracts with the general or the sub does have standing to make that recovery because in every case, ERISA trust funds will not have those contracts. They will not have those contractual relationships. In fact... Back me up a little bit. I'm a little confused. The ERISA case was filed originally against DVL, right? That's correct. Okay. And then the district court held there was no ERISA jurisdiction over the, against the Richardson, by the trustee, against the Richardson or the bonding company. That's correct. Those are... That's not appealed. So all we're looking at now, as I understand it, is what is the trustee right against the surety under Nevada law, right? Well, that's interesting because this was two cases. One of them had ERISA claims against Hartford and Richardson and was dismissed years ago. And that's the case in which the notice of appeal was filed. Another case, which was an ERISA case against Desert Valley with supplemental jurisdiction previously upheld by this court on the state law claims. And that case proceeded to judgment but has never been appealed. That's my first point in this case is that we've appealed the wrong case here and there's no jurisdiction to hear the appeal. We're talking about the merits, so I assume there's interest in talking about the merits. But in this case, we succeeded in reaching an ERISA judgment against Desert Valley. It was a default. That was the default judgment. And we proceeded with our supplemental jurisdiction claims under state law against Richardson and Hartford. And we succeeded on both of those, also on summary judgment. And that's where we find ourselves today. Okay. So if we're up here now on the claims under Nevada statutory Little Miller Act law, is it your argument that we should the way I had was understanding it was that the default judgment gave you the amount of the delinquency. That was. That you could rely on that for the amount of the delinquency. And then under the state or supplemental jurisdictional provisos, you were coming up to us to say, under Nevada law, you didn't have to give notice because you don't fit within the statutory terms. Well, that's correct. And that there is some way under the labor indebtedness aspect, you get the liquidated damages and attorney fees. Is that? That's right. The question is, what is indebtedness for labor in the Miller Act context and the general contractor liability context? How is it measured? Well, I would understand that under the how is it measured. The statute doesn't provide for liquidated damages or attorney fees. So you have to derive it from some contractual relationship or some as a matter of law. So coming back to your way you started out in answer to Judge Block's question, I understood you to say, Carter isn't the relevant authority anymore. You have direct authority. That is, the trustees have direct authority under ERISA to sue in their own right, thereby eliding notice. And so back me up. I'm losing track here. Well, at the time Carter was decided, ERISA hadn't been enacted. And the court in, I believe, a footnote, essentially dicta, raised the question of whether or not the trustee would have standing to make the claim and said, in essence, they're making this claim on behalf of an employee, and therefore I find standing. Well, that gives you the standing to come in under Nevada law, I guess, standing in the shoes of the contractor. True, but no longer necessary post ERISA, where subsequently cases have recognized that that part of the Carter decision isn't necessary for an ERISA trust claim against a Miller Act bond, because ERISA gives an independent standing to make a claim for indebtedness for labor. Even under a state statute? Absolutely. Absolutely. So, I'll have to digest that, but still, moving forward then, where does, where then do you draw the liquidated damage and attorney fees from? The indebtedness for labor equals everything we're owed under the labor agreement under ERISA. That's how indebtedness for labor is defined in the, this case's own prior decisions, the Tobler case from the Nevada Supreme Court, the Rico case from District of Nevada, the Summit case from District of Nevada. Carter defines it the same way. I understand that the cases give you access to it, but there has to be an underlying agreement that provides for those. So, where the counsel for the surety says, no, it's not in the collective bargaining agreement. It absolutely is. It is because the collective bargaining agreement says every union signatory company, and every collective bargaining agreement in the entire country says this, is bound to the terms of the trust agreement, and the trust agreements are all bound by ERISA, and the trust agreements all recite liquidated damage as an interest. And the trust agreement's in the record. I believe they are. I'm trying to think what they were attached to. I don't recall. But at the end of the day, ERISA provides for all those amounts anyways. So, there's both contractual. ERISA provides for liquidated damages and attorney's fees. Yeah, 29 U.S.C. 1132D. It's mandatory. 1132G. So, that's the penalty on top of the actual. That's right. And Desert Valley unquestionably owes all of that. So, the indebtedness for labor is whatever Desert Valley owes for Miller Act and 608-150. But what I don't understand is I can understand the underlying liability, but where do you conceptually disassociate the requisite notice that's required under the Nevada statute? And another way of putting this perhaps is that the concept basically of direct contractual relationship is what we ultimately squarely are dealing with under the Nevada statute, I take it, right? That's right. Should not the Nevada court, which has never really passed upon it, interpret in the first instance rather than this court what that means? In other words, whether the principles of CARD should also be applied in terms of interpreting the Nevada Little Miller Act, and should we not give the Nevada court an opportunity to interpret its own Little Miller Act in the first instance? And they may come out by grafting upon or using CARD conceptually to say, now, look, it's just manifestly unfair to sock these people for all the liability where they have no way of protecting themselves whatsoever and not place any employees on the underlying union fund. Well, the Nevada statute already answers that, because the Nevada statute has a Part I regarding any claimant and a Part II regarding claimants with direct contracts. That seems to be the situation to me. How do you disassociate the trustees from the responsibilities they have to the subcontractor? I just don't understand that. Well, there's no reason to disassociate it as a matter of finding Ninth Circuit precedent. Look how unfair it is. Would you agree that this is a very unfair result, that the bonding company has to be stuck with this without having any opportunity at all to, you know, have the notice provisions apply in terms of the relationship between the union employees and the subcontractor and the general contractor in turn? I don't understand that. It seems to be a manifest injustice here. It's perfectly fair, because, number one, the notice provision under the Miller Act would never go to the bonding company. It always goes to the general. The general is supervising his job site, and under 608-150 is responsible to answer for the debts of the subs. Well, but that I understand where there's a direct relationship here, but you have a disconnect when it comes to the employees to the subcontractor. And now that's what you're trying to ascribe liability to here. And I think it seems to me notice is, you know, the only fair way to really give the bonding company some fair opportunity. But Part I of the contract, the general contractor has paid the subs without having any awareness or any knowledge whatsoever, arguably, that these trust funds, you know, have not been satisfied. Well, the facts on the case below show that they did have notice. But just as to the legal question of the notice under the statute, Part I of Nevada's Little Miller Act requires no notice. We have to deal with the law as we have it written. Even if it's unfair. So you acknowledge the unfairness of it. Let's start with basic concepts of fairness, and let's see whether we have a statute that compels us to adopt an interpretation which would be manifestly unfair. Would you at least admit that the result is unfair? No. In fact, here's why. As between the trust funds, who don't even know the work is taking place, and the general contractor who's running that job, who's in a better place to know? Nevada has the Nevada legislature has decided it's the general. You're telling me then there's no need for notice whatsoever? There's no requirement for notice in those statutes. And the case law that deals with that, including from the Nevada Supreme Court, draws that distinction and only imposes the notice requirement when there is a direct contract. And that's the Garf case and the AmFac case. What if I were to interpret this or believe this to be a direct contractor relationship? You know, the trustee stands absolutely in the shoes of the employees. It has no independent power and no independent responsibility. It's tethered together. Why would it not be a reasonable interpretation of the Nevada statute to say that that satisfies the concept of direct relationship? And it's also fair and reasonable under all the circumstances. Because on the matter of binding Ninth Circuit precedent, the trust funds have no direct contract with those subs, which they must not have under ERISA. What binding Ninth Circuit precedent do you rely upon? Rose's transfer, Blodelco are two cases that point out ERISA trust funds have no direct contractual relationship with the union signatories and must not because of the independence required for ERISA trust funds. I'm not so sure I read those cases that way, but we'll take a look at it. Michigan has had these types of situations. And we noted, because I'm a very good law clerk, I can find these cases myself, a number of cases in Michigan where it was assumed that the trust funds were subject to the same notice provision under Michigan's Little Miller Act. And the issues in those cases were not the question of whether notice was required. It was assumed that the adequacy of the notice. And there were a number of cases I found that deal with that. But doesn't that seem to be really pretty much what we're talking about here? Except that Nevada's Little Miller Act doesn't say that. So we're going to be really --. Well, you know, the Little Miller Act in Michigan I think is pretty similar to Nevada's. But in any event, what do you think about certifying this issue to the Nevada Supreme Court? I think it's unnecessary because I think the law is clear and the statute says what it says. Well, I don't see a Nevada case that says that. But which one do you rely on? Well, the Nevada cases clearly make a distinction between those who have a direct contract and those who do not. And they only impose the notice. On this situation, I don't know any case that talks about this particular situation here. As to whether the ERISA trust has a direct contract with the subcontractor for purposes of Miller Act notice requirements? Well, you're combining, you're collapsing ERISA here with Little Miller Act to some extent, which is the best argument you have here. But I don't see it that way. But that's the only possible contract. You'd have to point to the labor agreement or some other document that could be a direct contract between a sub and a trust fund. And that would be an illegal agreement. You couldn't have it under ERISA. It's a direct relationship between the union employees and the subcontractor. That's the direct contract. It's irrelevant to the trust. The Tronde Company is entitled to the benefit of that. It seems that the trustees stand in the same shoes to me. Not only do they not, they can't. And the employees can't waive those claims. The employees can't take it on the check and leave their employer of liability. It's flatly illegal. And it doesn't constitute a defense to any ERISA liability vis-a-vis the employee, no matter what the employee has paid or received. Okay, so your argument is that you are not a third-party beneficiary. You have your own direct ERISA rights. We are both. We have third-party, and this is just a matter of the cases that say it. Rose's transfer says it. We are a favored third-party beneficiary under the law. We are not in direct contract with the employers because we're not parties to the labor agreement. As a matter of public policy, we have been given this favored position because pensions are more important than fertilizer and grass and the other things Richardson did pick up for their delinquent subs. It's just a policy decision that puts us in this position. I don't see any policy here that all abstracts the simple requirement of notice based upon the nature of the relationship between the trustees and the underlying employees. The policy is served because the trust is not aware of where and when the work takes place and has no way to know that. It's the whole purpose of notice. What's that? It's the whole purpose of notice. We're not knowing. But the question isn't whether the trust is getting notice from someone. You're saying whether the trust is giving notice to someone of something they don't know, something the general definitely does know, but the trust doesn't know. That's why it makes sense. Well, thank you. You can have a minute for rebuttal if you choose to take it. You are two minutes in the hall right now, but we'll give you a minute for rebuttal. Thank you very much. What I think is most important in terms of Mr. Siegel's last argument is getting back to what Judge Block just said. It's manifestly unfair to require Richardson or the surety to have to pay without notice first. And secondly, when the surety, when I don't know what manifestly unfair means, that's is that a constitutional argument? I will withdraw manifestly unfair. I will say unfair. I will say unfair. I don't even know what unfair means. When the trust. Is that a constitutional argument? Your Honor, I believe that this is what the statute says, and this is what you're correct. The federal legislature says, look, we are so concerned about contributions to pension plans that we're going to make it a matter of strict liability. This is something that insurance companies can charge for. They can have auditors out there. They can require reports from their generals as a condition of issuing a policy. They could have their people on the job sites looking and considering. I mean, there are all sorts of things that the insurance company can do, including raises premiums to take care of the risk. This is what your client is in the business of doing, is insuring risk. It gets paid for taking risk. Nothing fair or unfair about it. You know, it's just is it fair or unfair that, you know, we're insured the tax and, you know, if there was insurance, they had to pay out for the death of their child. It's just the way it works. This is a business, it's a business judgment. You're correct, Judge Kaczynski. The Reagan court said, analyzed several of the same arguments or same statements you just made and said that an insurance company, a surety, measures the risk, but the risk has to be something that they can measure and be aware of at the time the surety agreement is entered into. The point here, and this gets back to what Judge Blatt said, and which what's what's what's difficult about this. NRS 6. If the sub doesn't pay, you are the general is liable for whatever it is the sub doesn't pay. If you are the insurer of the general, then you are liable just like the general except the statute doesn't say that. The statute 608-150 has not said that. We can talk about whether it says it or not, but, you know, there's business about this that's not fair, you know, I just don't get it. That's fine. I'll withdraw in fear. The statute 608-150 says labor indebtedness. Not one Nevada case has said or defined labor indebtedness to include. Not Tobler. Tobler says that they allowed it, but they allowed it because it was a confession and a stipulation. That's fine. RICO, the other case he represents. I'm sorry, what did you just say? RICO? No, no. Oh, and Tobler? Oh, no problem. And Tobler. They didn't say it was stipulated. They just said they allowed it. They said that they subcontractor and general contractor. The legislature intended to protect the laborers to every element of this compensation. I'm quoting here from Tobler. Whether that compensation be an hourly wage or whether it be an hourly wage plus other benefits and the novelty of health and welfare provision, the contract does not in any wise prevent the contributor's therefore from being considered as payments for any work or labor-bound project. But no attorney's fees, no penalties, no liquidated damages. Go on to the next one because we've, of course, gone through this, but go on to the next one. The RICO case and the Summon case, there's a direct relationship between the general contractor and the trust fund in both cases. There is no such relationship in this case. And it gets back to what Judge Fischer said in the beginning. I'm sorry. In RICO and you're going to jump to issues on me? I'm sorry. I was putting them all together, Your Honor. But I will. You were arguing, look, this is not included in employee compensation, okay? And I gave you TOBRA that seems to be as expansive as I could possibly imagine the case being in saying whatever it is that the employees get is employee compensation. You said, well, does it include attorney's fees? Does it include this? Does it include that? So what? They said everything the employees get is employee compensation. They don't have to list everything that's included. They used very expansive language saying whatever it is. You know, how do you get around that? TOBRA, I think, is very clear that it did not include liquidated damages. It did not include penalties. It did include what the employees would get paid. It says every element of his compensation. Which is fine. Attorney's fees are not his compensation. Attorney's fees did not build the project. Attorney's fees and penalties are not the compensation of the employees. Attorney's fees and penalties did not build the project. 608-150 says labor indebtedness for the construction of the project. You say that. That's what the statute says. And Tobler does not expand it any farther than the benefits. I will agree with your honor that the fringe benefits are part of labor. Let me just show I understand. Yes, sir. You say if they, statute says, you get your hourly wage plus your benefits, you know, your vacation pay and your medicals and so on, then you get that. But the statute says, and if you have to go to court to recover it, you also are made whole by making sure that your lawyer gets paid for it. The youth employee, an out-of-pocket $60,000 for a lawyer to recover $300 worth in compensation, then that is somehow not covered. You think you think that that is somehow that attorney's fees are outside of that. I mean, I think I find that position sort of ludicrous. Well, let's go through it. I think it's very clear. But I don't want to say very clear. I will say this. NRS 608-150 says labor indebtedness for the project. That's where we start. That's the whole premise, because there's no ERISA claim brought against Richardson or Hartford. It's under 608-150 and 339-035. Nevada has not included liquidated damages or attorney's fees when they've not been stipulated to in any decision, including Tobler. Now, if you want to go a little further in terms of whether or not liquidated damages or attorney fees makes you whole, Nevada has said unequivocally, only under contract, only under statute, under an offer of judgment. There is none whatsoever in this case supportive of attorney's fees or liquidated damages. Secondly, on liquidated damages, it's a penalty. Nevada has its own rules, very stringent rules, in terms of liquidated damages. Again, not to have ever been analyzed under any one of these cases in Nevada or in the district court or Nevada state court ever. So I am — I cannot be any more convinced myself, and I hope to convince this Court, that there has never been ever one definition — or, I'm sorry, an expansion of the definition under 608-150 to include those things. Now, in terms of a loss — You know, I have no clue what you just said, but okay. Well, hopefully the other time — Well, you're well over your time. I'm — yeah, you're right, Your Honor. And I appreciate the time that you've given me. Listen to the tape. Thank you very much. Okay. He had seven additional minutes. Sure. I'll give you one more minute. On the attorney's fees and liquidated damages, I think that the thought process here has gone somewhat astray. Those amounts are part of the principle of indebtedness for labor. My client already has as a liquidated judgment against Desert Valley, and I think that's important to keep in mind. Indebtedness for labor vis-a-vis a trust fund are all the amounts ERISA requires that we recover to be made whole. But you're looking to ERISA to define indebtedness for labor. Well, ERISA plus the cases. We've got the Summit case from our district of Nevada plus the Tobler and Rico. And frankly, the Carter case said the same thing in pre-ERISA context. My second point, and then I'll end, is that it's important to keep — I think we've talked about things interchangeably here, but the Miller Act notice provisions are only applicable to the Hartford defendants. That wouldn't — whether you ultimately find we complied or didn't comply, that wouldn't help Richardson, whose claim is not Miller Act. That's what we're talking about here. We're talking about, you know, liability by reason of that statute. We're — and that's half the issue. The other half is NRS 608-150, which makes Richardson liable and has nothing to do with Miller Act bonds. Okay. Thank you, Judge Isayu-Fenselman. We are adjourned.
judges: Kozinski, Fisher, Block